JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD WALTHER, *et al.*,<br><br>                Plaintiffs,<br><br>    v.<br><br>MONTECITO BANK & TRUST, *et al.*,<br><br>                Defendants. | Case No. 2:24-cv-01936 FLA (BMx)<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITHOUT LEAVE TO AMEND [DKTS. 26, 27]** |

**RULING**

Before the court are Defendants Montecito Bank & Trust ("MBT") and American Riviera Bank's ("ARB") (collectively "Defendants") Motions to Dismiss the Case (respectively "MBT Mot.", Dkt. 26, and "ARB Mot.", Dkt. 27-1).[1] Plaintiffs Howard Walther and Iuliia Walther[2] (collectively "Plaintiffs") oppose the Motions. Dkt. 29 ("Opp'n to MBT Mot."); Dkt. 31 ("Opp'n to ARB Mot."). Defendants filed their respective replies in support of their Motions. Dkts. 33 ("MBT Reply"), 35 ("ARB Reply"). On October 16, 2024, the court found these matters appropriate for resolution without oral argument and vacated the hearing set for October 18, 2024. Dkt. 37; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated herein, the court GRANTS the Motions to Dismiss without leave to amend.

**DISCUSSION**

**I.   BACKGROUND**

Plaintiffs plead the following facts in the Second Amended Complaint (Dkt. 21, "SAC"), which the court treats as true for purposes of the subject Motion. *See Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016). Throughout 2018, non-party Dorothy Bogert Walther ("Dorothy Walther")—in the presence of Plaintiffs—opened checking accounts with Defendants, with Howard Walther designated as the beneficiary, and deposited funds totaling several hundred thousand dollars into these accounts.[3] *Id.* ¶¶ 9–11. In October 2018, Dorothy

---

[1] The court cites documents by the page numbers added by the court's CM/ECF system, rather than any page numbers that appear within the documents natively.

[2] Throughout Plaintiffs' Second Amended Complaint, they refer to Plaintiff Iuliia Walther as "Iulia Walther," "Iuliia Walther," and "Iuliaa Walther." *See generally* Dkt. 21. For the sake of conformity, the court will address Plaintiff as Iuliia Walther.

[3] Plaintiffs are allegedly husband and wife. MBT Mot. at 26. Plaintiff Howard Walther is the son of Dorothy Walther. SAC ¶ 30.

2

Walther—with her eldest daughter and granddaughter present—signed a Transfer of My Funds Agreement ("TFA") that stated:

> I give Iuliia Walther full legal authority to transfer all my cash funds from whatever bank accounts or sources into any of her Bank Accounts for safe keeping and to act on my behalf in any manner she may legally take as if I did so myself. …

*Id.* ¶ 13.

In October 2018, Dorothy Walther signed checks from her MBT and ARB accounts payable to Iuliia Walther in amounts ranging from $9,000 to $58,000. *Id.* ¶¶ 14, 18–20. On or about October 18, 2018, MBT closed Iuliia Walther's checking account and sent her a check for the remaining balance, which Iuliia Walther did not receive until November 2022. *Id.* ¶ 16. That same day, Shawn Dyer, a fraud manager at MBT, filed a report of suspected dependent adult elder financial abuse, stating MBT was "concerned that Dorothy [Walther] may have signed the check in Blank and that the payee name and amount were added after the fact." *Id.* ¶ 17. According to Plaintiffs, the report was false and meritless, and made without "any evidence whatsoever." *Id.* Nevertheless, MBT's agents cleared three checks deposited by Iuliia Walther and mailed notice of the cleared funds and their immediate availability. *Id.* ¶ 24.

Also on or about October 18, 2018, all funds held in Iuliia Walther's ARB account were removed from the account by ARB, and eventually transferred to the account of non-party Courtney DeSoto ("DeSoto"). *Id.* ¶¶ 21, 26.[4] According to Plaintiffs, ARB intentionally concealed the transfer and did not inform Iuliia Walther. *Id.* ¶ 21. That same day, ARB's Vice President Norma Hernandez filed a report of suspected dependent adult elder financial abuse, which stated:

---

[4] On October 24, 2018, the Santa Barbara County Superior Court appointed DeSoto as temporary conservator of the person and estate of Dorothy Walther. Dkt. 27-3 at 34–35.

> The employee did her due diligence prior to processing [Dorothy Walther's] request and found that Dorothy's account had not sufficient funds to negotiate the check, rejecting deposit. The employee [Norma Hernandez] decided to investigate Dorothy's account further due to the dubious behavior portrayed by Iulia and Howard. Dorothy's account had various suspicious transactions: two large check for $50,000 payable to Iulia Walther processed on 10/11/18 and 10/16/18 and deposited into her Iulia's personal account with the bank. The employee tried calling Dorothy to verify the legitimacy of the checks and transactions with no success.

*Id.* ¶ 22 (brackets and errors in original). According to Plaintiffs, this statement was false because Dorothy Walther contacted Norma Hernandez by telephone on October 17, 2018, and advised her that the checks to Iuliia Walther were valid and legal. *Id.* ¶¶ 22–23.

On or about October 31, 2018, Plaintiffs were arrested, confined in jail, and prosecuted on charges of elder financial abuse. *Id.* ¶ 25. Plaintiffs were allegedly confined until December 12, 2018. *Id.* According to Plaintiffs, the charges of elder financial abuse were ultimately dismissed. *Id.*

Plaintiffs filed their initial Complaint on March 11, 2024, asserting six causes of action: (1) Breach of Contract; (2) Breach of Covenant of Good Faith and Fair Dealing; (3) Negligence; (4) Conversion; (5) Wrongful Dishonor of Checks in Violation of California Uniform Commercial Code § 4402; and (6) Declaratory Relief. Dkt. 1 ¶¶ 16–48. On September 2, 2024, Plaintiffs filed the operative SAC, asserting the same six causes of action. SAC ¶¶ 70–196.

## II.   LEGAL STANDARD

Under Rule 12(b)(6),[5] a party may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." The purpose of Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency of claims asserted in

---

[5] All citations to a "Rule" shall be to the Federal Rules of Civil Procedure, unless otherwise specified.

4

a complaint. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district court properly dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts "to support a cognizable legal theory." *Caltex*, 824 F.3d at 1159.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).

"Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (internal citations omitted). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex*, 824 F.3d at 1159; *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("We accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."). Legal conclusions, however, "are not entitled to the assumption of truth" and "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

/ / /

/ / /

## III. ANALYSIS

### A. Statutes of Limitations

Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing are subject to either a two-year statute of limitations for oral contracts, Cal. Code Civ. Proc. § 339, or a four-year statute of limitations for written contracts, Cal. Code Civ. Proc. § 337. The latest breach of a contract allegedly occurred in October 2018, *see* SAC ¶¶ 33–37, while the initial Complaint was not filed until March 11, 2024, Dkt. 1. Thus, the statute of limitations has clearly run for these claims absent tolling.

Plaintiffs' negligence claims are subject to a two-year limitations period under Cal. Code Civ. Proc. § 335.1. As Defendants' alleged breaches took place in October 2018, *see* SAC ¶¶ 45–48, the statute of limitations has likewise run on these claims absent tolling.

Conversion claims are subject to a three-year statute of limitations, which accrues ordinarily on the date of conversion. Cal. Code Civ. Proc. § 338. Plaintiffs allege Defendants wrongfully transferred funds out of their accounts in October and November 2018. SAC ¶¶ 49–54. Therefore, the statute of limitations on that cause of action has also run absent tolling.

A claim for violation of Cal. Com. Code § 4402 is subject to a three-year statute of limitations under Cal. Com. Code § 4111. As the alleged wrongful dishonor of checks occurred in October 2018, SAC ¶¶ 25–28, the statute of limitations has run on that claim absent tolling.

Plaintiffs' final claim is for declaratory relief. "[T]he period of limitations applicable to ordinary actions at law and suits in equity should be applied in like manner to actions for declaratory relief. Thus, if declaratory relief is sought with reference to an obligation which has been breached and the right to commence an action for 'coercive' relief upon the cause of action arising therefrom is barred by statute, the right to declaratory relief is likewise barred." *Maguire v. Hibernia S. & L.*

6

*Soc.*, 23 Cal. 2d 719, 734 (1944).  Accordingly, because the statute of limitations has run for all of Plaintiffs' claims, Plaintiffs' request for declaratory relief is likewise barred absent tolling.

Plaintiffs contend they "sufficiently allege delayed discovery for purposes of delaying accrual of the causes of action."  Opp'n to MBT Mot. at 12; Opp'n to ABR Mot. at 11.  Plaintiffs fail to meet their burden to establish tolling under the delayed discovery rule.

Under California law, "[a] cause of action accrues when the claim is complete with all of its elements."  *Slovensky v. Friedman*, 142 Cal. App. 4th 1518, 1528 (2006) (citing *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)).  The delayed discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reasons to discover, the cause of action."  *Norgart*, 21 Cal. 4th at 397; *Slovensky*, 142 Cal. App. 4th at 1528–29.  Under this rule, "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing[.]"  *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110–11 (1988).  "So long as there is a reasonable ground for suspicion, the plaintiff must go out and find the facts; she cannot wait for the facts to find her."  *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008).

To obtain relief under the delayed discovery rule, a plaintiff must "plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  *E-Fab, Inc. v. Accountants, Inc. Services*, 153 Cal. App. 4th 1308, 1319 (2007).  "In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to show diligence[.]"  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (internal quotations omitted).  Conclusory allegations will not suffice.  *Id.*

Here, Plaintiffs contend their claims did not accrue until they "discovered in December 2022 that Defendants had mailed letters to Plaintiffs indicating that the checks were indeed valid and would be honored."  SAC ¶ 31 (capitalization omitted).

7

Plaintiffs further allege "[t]his evidence was concealed by Defendants and law enforcement officers and discovered by Plaintiffs when Plaintiffs filed a motion to recover seized property and documents and recovered the evidence in December 2022." *Id.* (capitalization omitted). Plaintiffs state they were "unable to discover the material evidence supporting the claims against Defendants until Plaintiffs' motion to recover seized property was granted by a Judge of the Santa Barbara County Superior Court." *Id.* (capitalization omitted). In addition, Plaintiffs argue their incarceration and related criminal proceedings further delayed the discovery of their claims. *Id.* (capitalization omitted).

These contentions are conclusory and do not articulate with any specificity why Plaintiffs were unable to discover their claims against MBT or ARB within the applicable statutes of limitations. *Fox*, 35 Cal. 4th at 811 (finding inadequate allegations that "there was no way 'through which her reasonable diligence would have revealed, or through which she would have suspected the [defective product] as a cause of her injury'"). To the contrary, the allegations of the SAC make clear Plaintiffs knew or had reasonable grounds to suspect their claims against Defendants as of October 31, 2018, when "Plaintiffs were arrested, confined in jail, and prosecuted" based on Defendants' refusal to honor Dorothy Walther's checks. *See, e.g.*, SAC ¶ 25.

Plaintiffs argue they were only able to discover the material evidence supporting their claims after their motion to recover seized property was granted by the Santa Barbara County Superior Court. *Id.* ¶ 31. But Plaintiffs do not offer any explanation for why they did not investigate their claims at an earlier date, or present sufficient facts to establish diligence. *See Platt*, 522 F.3d at 1054. Plaintiffs' assertion that Defendants and unnamed law enforcement officials concealed relevant evidence, SAC ¶ 31, is conclusory and insufficient to establish diligence. *See Fox*, 35 Cal. 4th at 808. Similarly, Plaintiffs fail to explain why tolling related to their incarceration and prosecution brings their claims within the various statutes of

limitations, especially considering they admit they were released from confinement in December 2018, SAC ¶ 25, but did not file the Complaint until March 11, 2024. Accordingly, the court finds that Plaintiffs are not entitled to tolling due to delayed discovery.

### B. Plaintiffs' Request for Leave to Amend

Except as provided under Rule 15(a)(1), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Dismissal without leave to amend is proper "if it is clear … that the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Grp.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (citation omitted); *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint … constitutes an exercise in futility….").

Plaintiffs have already amended their complaint twice (Dkts. 16, 21), including in direct response to Defendants' prior Motions to Dismiss the First Amended Complaint based on the applicable statutes of limitations (Dkts. 17, 18). Although Plaintiffs request further leave to amend, they do not identify any additional facts they would plead if granted such leave. *See* Opp'n to MBT Mot. at 19; Opp'n to ARB Mot. at 19. Accordingly, the court finds that further amendment would not cure the deficiencies in Plaintiffs' claims and be futile. The court, therefore, GRANTS Defendants' motions to dismiss without leave to amend.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**CONCLUSION**

For the foregoing reasons, the court GRANTS Defendants' Motions to Dismiss WITHOUT LEAVE TO AMEND. Having granted the Motions for the reasons stated, the court need not address the parties' remaining arguments. The case is dismissed without prejudice.

IT IS SO ORDERED

Dated: November 4, 2024

FERNANDO L. AENLLE-ROCHA
United States District Judge